UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:  Martin William Acevedo and                          No.  13-12-11819 TS
        Stephanie Anne Acevedo,

        Debtors.

and

In re:  Cary Harrell and                                    No. 7-12-12906 JA
        Rebecca Harrell,

        Debtors.

## MEMORANDUM OPINION

At the request of the Chapter 13 Trustee ("Trustee") and the Office of the United States

Trustee ("UST"), the Court revisits a thorny issue involving payment of trustee's fees:  May the

Trustee pay herself the statutory percentage fee in Chapter 13 cases where no plan is confirmed?[1]

The question was raised in this District in 2001 and answered in the negative.[2]  Armed with new,

thoughtful arguments about statutory construction, the Trustee and UST urge the Court to take

another look.[3]  Debtors argue that the statutes have not changed materially since 2001, so there is

---

[1] The Debtors in each case filed a Motion to Disgorge Trustee's Expenses and Commission raising the issue before the Court.  *See* Case No. 7-12-12906JA - Docket No. 54) and Case No. 13-12-11819TA - Docket No. 67.

[2] *In re Rivera,* 268 B.R. 292 (Bankr. D.N.M. 2001), *affirmed sub nom.*, *In re Miranda,* 285 B.R. 344, 2001 WL 1538003 (10th Cir BAP 2001)(unpublished opinion).  Neither *Rivera* nor *Miranda* is binding precedent.  *Rivera* was decided by a former bankruptcy judge in this District.  Decisions of other bankruptcy judges within the same district are not binding on a different bankruptcy judge in the same district.  *See Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 430 n. 10 (1996) ("If there is a federal district court standard, it must come from the Court of Appeals, not from the over 40 district court judges in the Southern District of New York, each of whom sits alone and renders decisions not binding on the others."); *In re AM Int'l, Inc.,* 203 B.R. 898, 905 (D. Del. 1996) (noting that the bankruptcy court is not bound by its prior decisions).  Unpublished opinions of the Tenth Circuit Bankruptcy Appellate Panel "may be cited for their persuasive value, but are not precedential except under the doctrines of law of the case, claim preclusion, and issue preclusion."  10th Cir. BAP LR 8018-6.

[3] The Trustee and UST also directed the Court to two unreported cases from bankruptcy courts in other districts  which held that the Chapter 13 trustee is entitled to collect and retain the statutory percentage fee

no reason to second guess the well-reasoned *Rivera/Miranda* decisions.  After a careful review, the Court has determined that the better interpretation of the statutes in question prohibits the Trustee from collecting her fees in cases where no plan is confirmed.

## I.     FACTS AND PROCEDURAL HISTORY

The same issue was raised in two cases, one assigned to Judge Jacobvitz and one assigned to Judge Thuma.  Because there is a paucity of case law on the issue, and resolution of the issue is important to the administration of Chapter 13 cases, the judges heard the Debtors'[4] motions *en banc*.  The Debtors and the Trustee either stipulated to or conceded the following:[5]

1.      The Debtors each filed Chapter 13 petitions and plans, and then began making payments to the Trustee in the amounts proposed by their plans.[6]

2.      Debtors' plans are in the form typically used in New Mexico, and both provided that the Trustee "shall receive a percentage fee for each disbursement as fixed by the United States Trustee pursuant to 28 U.S.C. §586, not to exceed 10 percent."

---

even in cases that are dismissed or converted before confirmation of a chapter 13 plan.  *See In re Cryder,* Case No. 11-56676, United States Bankruptcy Court, Southern District of Ohio (June 15, 2012), and *In re Antonacci,* Case No. BK-S-08-23349 LBR, United States Bankruptcy Court, District of Nevada (December 27, 2011).  In *Cryder,* the Chapter 13 trustee filed a motion requesting the court to determine the statutory fee, no objection or responsive pleading was filed (though the trustee solicited amicus briefs), the UST filed a lengthy brief, and the bankruptcy court issued a two-page order with no analysis. In *Antonacci,* the bankruptcy court held a hearing, and the UST filed a brief in support of authorizing the trustee to collect and retain the percentage fee in dismissed and converted cases.  The bankruptcy court's order granting the motion is two pages and contains no analysis.

[4] In this opinion, Martin William Acevedo and Stephanie Anne Acevedo are called the "Acevedo Debtors."  Cary Harrell and Rebecca Harrell are called the "Harrell Debtors."  Acevedo Debtors and the Harrell Debtors collectively are called the "Debtors."

[5] The Trustee and UST stated in oral argument that the outcome of these contested matters would not affect the Trustee's salary or the payment of her office expenses.  Rather, both stated that a ruling in their favor could reduce the percentage fee charged in Chapter 13 cases.

[6] In the Harrell Debtors' case, the Debtors made only one plan payment in the amount of $650.00.  The Harrell Debtors' plan proposed payments of $600 per month for 60 months.  In the Acevedo Debtors' case, the Debtors made two plan payments of $175.00.  The Acevedo Debtors' plan proposed payments of $175 per month for 60 months.

-2-

3.      Neither plan was confirmed.  Instead, before confirmation, the Harrell Debtors'

case converted to chapter 7, and the Acevedo Debtors' case was dismissed.

4.      The Chapter 13 Trustee collected a 10% commission on payments she received in

both cases, and retained that amount before disbursing the balance of the payments received to

Debtors' counsel in partial payment of counsel's approved fees.[7]

5.      Debtors' counsel filed motions to require the Trustee to disgorge the retained

trustee's fees.  The Trustee and UST objected.

6.      The Trustee did substantial work in each case.

7.      The UST's current Handbook for Chapter 13 Standing Trustees (October 1, 2012

edition) provides the following guidance to trustees:

> The standing trustee must retain debtor payments until confirmation,
> unless otherwise ordered by the court or otherwise required by law or
> local rule.  If the plan is confirmed, the standing trustee must distribute
> payment in accordance with the plan as soon as practicable.
> …
> If the case is dismissed or converted pre-confirmation, the standing
> trustee must return any funds on hand to the debtor, after deducting §
> 503(b) claims to the extent allowed by court order.
>
> Handbook, page 3-35.

## II.      DISCUSSION

A.      <u>The Statutory Subsections in Question</u>.  Resolution of the issue before the Court

turns on the construction of two statutory subsections.  The first is 28 U.S.C. § 586(e), which

---

[7]*See* the Trustee's final report and account filed on December 15, 2013 in the Acevedo Debtors' case, Case No. 13-12-11819 TA (Docket No. 66) showing that the Acevedo Debtors made plan payments of $350 and that the Trustee made the following disbursements:  $315 to the Acevedo Debtors' counsel on his allowed fees and $35 to the Trustee for trustee fees.  *See* the Trustee's final report and account filed on December 12, 2012 in the Harrell Debtors' case, Case No. 7-12-12906 JA (Doc. No. 33) showing that the Harrell Debtors made plan payments of $650 and that the Trustee made the following disbursements: $585 to the Harrell Debtors' counsel on his allowed fees and $65 to the Trustee for trustee fees.

-3-

authorizes the Attorney General in consultation with the UST to fix a percentage fee for standing

trustees in Chapter 12 and Chapter 13 cases. 28 U.S.C. § 586(e)(1). Section 586(e) further

provides:

> (2) Such individual shall collect such percentage fee from all payments received by such individual under plans in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee. Such individual shall pay to the United States trustee, and the United States trustee shall deposit in the United States Trustee System Fund—

> (A) any amount by which the actual compensation of such individual exceeds 5 per centum upon all payments received under plans in cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee; and

> (B) any amount by which the percentage for all such cases exceeds—

> (i) such individual's actual compensation for such cases, as adjusted under subparagraph (A) of paragraph (1); plus

> (ii) the actual, necessary expenses incurred by such individual as standing trustee in such cases. Subject to the approval of the Attorney General, any or all of the interest earned from the deposit of payments under plans by such individual may be utilized to pay actual, necessary expenses without regard to the percentage limitation contained in subparagraph (d)(1)(B) of this section.

11 U.S.C. § 586(e)(2).

The second subsection is 11 U.S.C. § 1326(a), found in Chapter 13 of the Bankruptcy

Code. It provides:

> (1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount—

> (A) proposed by the plan to the trustee;

> …

> (2) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable.

-4-

> If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).
>
> 11 U.S.C. § 1326(a)(1)(A) and (a)(2).

In Chapter 13 cases with confirmed plans, these two subsections make clear that the trustee is paid the designated percentage fee from the debtors' plan payments made to the trustee. The issue before the Court is whether the trustee may also be paid her percentage fee in cases where no plan is confirmed, or instead must return to the debtor all plan payments received after deducting any unpaid claim allowed under § 503(b).[8]

B.      The Parties' Arguments.   The Trustee asserts that § 586(e)(2) unambiguously requires her to deduct the trustee's percentage fee from all payments she receives from the debtors, whether or not a plan is confirmed, and to apply the funds received for the fee to pay the percentage fee.  She further argues that § 586(e)(2) is the only statute that governs payment of the trustee's fee, and that § 1326 addresses distributions to creditors, not payment of the trustee's statutory percentage fee.  Finally, the Trustee argues that under § 586(e)(2) her obligation to collect the percentage fee is "triggered" by receipt of plan payments, not plan confirmation.

The UST agrees with the Trustee that § 586(e)(2) is mandatory—"the trustee has no discretion in the matter but is required to collect the fee in every applicable case."[9] The UST's argument varies from the Trustee's, however, because it acknowledges the relevance of § 1326 to the issue. The UST asserts that § 1326 can be read in harmony with § 586(e)(2) by construing § 1326(a)(2) to require the trustee to return to the debtor only those payments made to the trustee

---

[8] Except for references to "Section 586" or "§ 586," or any subsection thereof, references to "Section" or "§" in this opinion refer to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et. seq*. References to "Section 586" or "§ 586" refer to 28 U.S.C. § 586 or subsections thereof.

[9] United States Trustee's Opposition to Debtors' Motion to Disgorge, p.2 - Case No. 13-12-11819 TA (Docket No. 80);  United States Trustee's Opposition to Debtors' Motion to Disgorge, p.2 – Case No. 7-12-12906 JA (Docket No. 57).

-5-

for distribution to creditors (less payment of administrative expenses), but not to require return of the trustee's percentage fee in unconfirmed cases.

C.    Statutory Construction. When interpreting federal statutes, the Court's primary goal is to deduce the intent of Congress from the statute's language, and apply the statute accordingly. *See In re HealthTrio, Inc.,* 653 F.3d 1154, 1161 (10th Cir. 2011) ("'It is our primary task in interpreting statutes to determine congressional intent, using traditional tools of statutory construction.'")(quoting *St. Charles Inv. Co. v. Comm'r,* 232 F.3d 773, 776 (10th Cir. 2000)(additional internal quotation marks omitted)). When interpreting a statute, words should generally be given their ordinary or natural meaning. *Leocal v Ashcroft*, 543 U.S. 1, 9 (2004). *See also, Hackwell v. United States,* 491 F.3d 1229, 1236 (10th Cir. 2007)(stating that words used in a statute will be interpreted according to "'their ordinary, contemporary, common meaning' at the time Congress enacted the statute")(quoting *Perrin v. United States,* 444 U.S. 37 (1979)). If the language of a statute is clear, ordinarily the Court's inquiry ends. *See State Bank of Southern Utah v. Gledhill (In re Gledhill),* 76 F.3d 1070, 1077 (10th Cir. 1996) ("If the statute is clear, our inquiry ends.")(citation omitted). "'It is a well-established law of statutory construction that, absent ambiguity or irrational result, the literal language of a statute controls.'" *HealthTrio,* 653 F.3d at 1161 (quoting *Edwards v. Valdez,* 789 F.2d 1477, 1481 (10th Cir.1986)).[10] Further, courts must read statutes as a whole, rather than in isolation. *See United States v. Morton,* 467 U.S. 822, 828 (1984)("We do not . . . construe statutory phrases in isolation; we read statutes as a whole."). Accordingly, the meaning ascribed to a particular phrase must be consistent with the larger statutory context. *See Rake v. Wade,* 508 U.S. 464, 474 (1993) ("[S]tatutory terms are

---

[10]*See also, Russell v. United States,* 551 F.3d 1174, 1178 (10th Cir. 2008) ("[I]f the statutory language is clear, our analysis ordinarily ends.") (citation and internal quotation marks omitted); *United States v. Kammersell,* 196 F.3d 1137, 1139 (10th Cir. 1999)(if congressional will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive)(citation omitted).

often 'clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes [its] meaning clear ....'") (quoting *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 371 (1988)). In general, only if the language of a statute is ambiguous should the court consider legislative history and public policy underlying the statute to discern its meaning. *See United States v. LaHue,* 170 F.3d 1026, 1028 (10th Cir. 1999) ("Where the statute is ambiguous, we look to the legislative history and the underlying public policy of the statute.")(citing *United States v. Simmonds,* 111 F.3d 737, 742 (10th Cir. 1997)). *See also, United States v. Montgomery,* 475 B.R. 742, 746 (D. Kan. 2012) (the court looks to the legislative history and the underlying public policy only if a statute's plain language is ambiguous as to Congressional intent). Finally, whenever possible, the Court should construe apparently conflicting statutes harmoniously. *See Chemical Weapons Working Group, Inc. v. U.S. Dept. of the Army,* 111 F.3d 1485, 1490 (10th Cir. 1997)("We also must construe apparently conflicting statutes harmoniously where possible.")(citation omitted); *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC,* 327 F.3d 537, 544 (7th Cir. 2003) (court has an obligation to construe two statutory provisions in such a way as to avoid conflicts between them, if such a construction is possible and reasonable). With these principles in mind, the Court will consider the language of the two statutes in question.

D.     Section 1326(a)(2) Refers to All of the Debtors' Plan Payments to the Trustee, not Only the Portion for Distribution to Creditors. Section 1326 refers to two types of payments. First, the debtor makes plan payments to the trustee. *See* 11 U.S.C. § 1326(a)(1)(A) (providing that the debtor make "payments … in the amount … proposed by the plan to the trustee"). Then, when the plan is confirmed the trustee takes those payments, deducts her fee, pays administrative

claims, and pays pre-petition creditors in accordance with the terms of the plan. *See* §

1326(a)(2), (b) and (c).[11]

Section 1326(a)(2) states that, if no plan is confirmed, the Trustee must return to the

debtor all payments made under § 1326(a)(1)(A), less allowed administrative claims.[12]   Section

1326(a)(1)(A) provides:

> Unless the court orders otherwise, the debtor shall commence making **payments**
> not later than 30 days after the date of the filing of the plan or the order for relief,
> whichever is earlier, **in the amount**—

> (A) **proposed by the plan to the trustee** ….

11 U.S.C. § 1326(a)(1)(A)(emphasis added).

Thus, in cases where no plan is confirmed, whether § 1326(a)(2) allows the trustee to retain the

trustee's fee depends on  the meaning of  "payments … in the amount … proposed by the plan to

the trustee."   11 U.S.C. § 1326(a)(1)(A).  If the payment described in § 1326(a)(1)(A) includes

trustee's fees, then under § 1326(a)(2) the trustee would not be entitled to retain the fees in

unconfirmed cases.

The UST does not dispute that "payments … in the amount … proposed by the plan to

the trustee" includes all payments to the trustee for ultimate distribution to creditors.  The UST

asserts, however, that the amount "proposed" under § 1326(a)(1) includes *only* payments for

ultimate distribution to creditors, and cannot include funds received for payment of trustee's

---

[11]*See* 11 U.S.C. § 1326(a)(2)("If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable."); 11 U.S.C. § 1326(b)("Before or at the time of each payment to creditors …."); 11 U.S.C. § 1326(c) ("…the trustee shall make payments to creditors under the plan.").

[12] 11 U.S.C. § 1326(a)(2)("If a plan is not confirmed, the trustee shall return any such payments … to the debtor, after deducting any unpaid claim allowed under section 503(b).")  Neither the UST nor the Trustee contends that the trustee's percentage fee constitutes a § 503(b) administrative expense. *See Rivera,* 268 B.R. at 294 (acknowledging that the Trustee's percentage fees "do not qualify as § 503(b) administrative expenses."). *See also Miranda,* 2001 WL 1538003 at \*2 (noting that because the Chapter 13 trustee concedes that § 326 does not govern the standing Chapter 13 trustee's compensation, § 330(a) and § 503(b) are inapplicable to the application of §1326(a)(2)).

fees. The UST reasons that the term "proposed" connotes discretion or choice. Because trustee's fees are mandated by § 586(e)(2), such fees cannot be "proposed" by a plan.[13] If the UST's construction were adopted, 11 U.S.C. § 1326(a) and 28 U.S.C. § 586(e) could be harmonized: § 586(e)(2) would require payment of the trustee's fees in all cases in which a debtor makes payments to the trustee, including cases in which no plan is confirmed, while payments under § 1326(a)(1)(A) would only include payments to the trustee for disbursement to creditors; thus, the payments the trustee is required to return to the debtors under § 1326(a)(2) would not include the trustee's fee.[14]

We begin by examining the plain language of § 1326(a)(1) in the context of the relevant statutes as a whole, giving words their ordinary and natural meaning. The Court finds that the ordinary and natural meaning of the phrase "the amount proposed by the plan to the trustee" is whatever amount will be paid to the trustee under the plan. This amount includes both the amount of the trustee's percentage fee and the amount to be distributed by the trustee to

---

[13] The trustee's percentage fee cannot be waived or modified by debtors, creditors, the standing Chapter 13 Trustee, or the Court. *See In re Schollett,* 980 F.2d 639 (10th Cir. 1992) (holding that the bankruptcy court has no authority to review the standing trustee's percentage fee set by the Attorney General under 28 U.S.C. §586(e)); *In re Roesner,* 153 B.R. 328, 333 (Bankr. D. Kan. 1993) (acknowledging that "bankruptcy courts have no power to review percentage fees set by the Attorney General …."); *In re Marriott,* 156 B.R. 803, 805 (Bankr. S.D. Ill. 1993) (concluding "that there is no basis for judicial adjustment of the trustee's fee fixed pursuant to §586(e)(1)(B)").

[14] The UST points to § 1326(b) as further support for its position that the Trustee is entitled to retain the percentage fee in both confirmed and unconfirmed cases. Section 1326(b) provides in part:

> (b) **Before or at the time of each payment to creditors** under the plan, there shall be paid—
> > (1) any unpaid claim of the kind specified in section 507(a)(2) of this title;
> > (2) if a standing trustee appointed under section 586(b) of title 28 is serving in the case, the percentage fee fixed for such standing trustee under section 586(e)(1)(B) of title 28….

11 U.S.C. §1326(b) (emphasis added). Payments to creditors occur only upon confirmation. 11 U.S.C. §1326(a)(2). The UST argues the "before or at the time" language in §1326(b) permits the Trustee to pay the percentage fee in unconfirmed cases because the payment would nevertheless occur before any payment to creditors.

-9-

creatitors.[15]  A debtor's plan ordinarily proposes monthly lump sum payments to the trustee for

the term of the plan.[16]  The trustee collects her percentage fee from the payments she receives,[17]

and ordinarily the only payments she receives are the monthly lump sum payments provided for

in a debtor's proposed plan.[18]  Thus, payments under §1326(a)(1)(A) necessarily include the

amount for the trustee's fee.

      The Tenth Circuit's decision in *In re BDT Farms, Inc.,* 21 F.3d 1019 (10th Cir. 1994),

supports this conclusion.  *In BDT Farms,* the Tenth Circuit held (construing 28 U.S.C. §

586(e)(2)) that the Chapter 12 trustee collects the percentage fee from the entire monthly

payment specified under a Chapter 12 plan.  *BDT,* 21 F.3d at 1023.[19]  The "payments" addressed

in *BDT Farms* are the ones referred to in § 1226(a), the parallel section to § 1326(a) in Chapter

13 cases.  In reaching its conclusion, the Tenth Circuit construed "all payments received by such

---

[15] *Cf. In re Turner,* 168 B.R. 882, 889 (Bankr. W.D. Tex. 1994) (concluding that "[t]he payments under a plan must include a component for the trustee's percentage fee, because the trustee is required to *deduct* this fee from 'payments received.'") (emphasis in original).

[16] Paragraph 1.1 of the form plan used in New Mexico, titled "Payments," provides: "Debtor shall pay $_____ per month for a period of ___ months."

[17] *See* 28 U.S.C. § 586(e)(2) (providing that the Trustee "shall collect such percentage fee from all payments received . . . under plans . . .").

[18] There are some exceptions.  For example, in some cases the debtor will sell assets and pay the sale proceeds to the trustee.

[19] Upon finding that the language in § 586(e) was ambiguous, the Tenth Circuit deferred to the UST's interpretation of the statute.  *BDT Farms,* 21 F.3d at 2013.  The Court need not take that approach here for three reasons.  First, the Court finds that § 1326, not § 586, establishes when and under what conditions the Trustee may deduct and retain the percentage fee.  The UST is not charged with administering § 1326, which is part of the Bankruptcy Code; consequently, the UST's interpretation of § 1326 is not entitled to *Chevron* deference.  *See BDT Farms,* 21 F.3d at 1023 (stating that deference is given "to the construction of the statute by the *administering agency . . .*") (emphasis added).  Second, the UST's current Handbook is consistent with the Court's conclusion that the Trustee may not retain the percentage fee in unconfirmed cases.  A court should not automatically accept an agency's litigation position as evidence of the agency's interpretation of the statute, especially when evidence suggests that the agency may have changed its position as part of the litigation. *See Southern Utah Wilderness Alliance v. Dabney,* 222 F.3d 819, 828 (10th Cir. 2000) ("[a]n agency is free to change the meaning it attaches to ambiguous statutory language, and the new interpretation may still be accorded *Chevron* deference[,]" but "[a] position taken by an agency during litigation … is not sufficiently formal that it is deserving of *Chevron* deference.").  Third, § 1326 is not ambiguous.

-10-

individual [the trustee] under plans," contained in § 586(e)(2), to mean the entire monthly payment, without deduction a portion for the trustee's percentage fee.

The Court rejects the UST's assertion that a debtor cannot "propose" to pay trustee's fees. First, while the Court agrees that the fee percentage is fixed as set forth in § 586(e), the actual dollar amount of the fee is not fixed. Instead, the dollar amount of the fee depends on the size of the debtor's monthly lump sum plan payment. Often, the debtor files a plan proposing a smaller monthly plan payment (which would result in a smaller trustee's fee), while the trustee objects and argues that the monthly payment should be larger. The fee the trustee actually collects can vary significantly, depending on the outcome of the dispute over the size of the monthly plan payment. Thus, although the fee percentage is mandated, the debtor nevertheless "proposes" the amount of the monthly fee when she files her plan.

Second, other payments a debtor proposes to pay the trustee under § 1326(a)(1)(A) are as "mandatory" as the trustee's fee. For example, in jurisdictions requiring residential mortgage payments to be made through the trustee, a debtor must pay, without modification, all amounts due after commencement of the Chapter 13 case under a residential mortgage loan in accordance with the pre-bankruptcy agreement of the parties. *See* 11 U.S.C. §1322(b)(2).[20] Similarly, pursuant to § 1322(f) a plan may not materially alter the terms of certain loans from ERISA-qualified plans; where such a loan is outstanding and if the court requires that the payment be made through the trustee, the debtor has no choice but to repay through the trustee the loan as

---

[20] In some jurisdictions the debtor must make all payments under residential mortgage loans to the trustee for distribution to the lender as part of the debtor's payments under the plan. *See, e.g.,* United States Bankruptcy Court for the Southern District of Texas BLR 3015-1(b) ("Home mortgage payments will be made through the chapter 13 trustee."). In such jurisdictions, the portion of the debtor's monthly plan payment that the trustee distributes to the mortgage holder is not only mandatory, but also part of the payments described in §1326(a), (b), and (c). In other words, the distributions to creditors that the Trustee contends do not contain a mandatory component would, in fact, include a mandatory component in jurisdictions requiring mortgage payments to be made through the trustee.

agreed. In either case, there is no dispute or potential dispute to be resolved by a proposal, but the amounts are included in the monthly payment "proposed" by a plan under § 1326(a)(1)(A).

Section 1326(b) supports the Court's interpretation of § 1326(a)(1)(A). Section 1326(b) requires the standing Chapter 13 trustee to pay the trustee's percentage fee "before or at the time of each payment to creditors under the plan." But the trustee may pay creditors only under a confirmed plan. *See* 11 U.S.C. § 1326(a)(2) (requiring the trustee to retain the payments until confirmation or denial of confirmation, and then distribute the payments in accordance with the plan "[i]f a plan is confirmed"). Because the trustee will never pay creditors if no plan is confirmed, and § 1326(b) provides for payment of trustee fees *before* or the time the trustee pays creditors, it follows that, if confirmation never happens, § 1326(b) does not contemplate payment of the trustee's percentage fee. *See Rivera,* 268 B.R. at 294 (observing that §1326(b) "seems to assume a prior confirmation.").

The Court's interpretation of § 1326(a)(1)(A) is also consistent with the overall purpose of § 1326. When the Bankruptcy Code was enacted in 1978, § 1326 consisted only of what are now subparagraphs (b) and (c).[21] There was no mention of payments proposed by a plan, payments by the debtor to the trustee, or disbursement of payments under a plan if a plan is not confirmed; the section only addressed payment of the trustee's fee and "payments to creditors" to be made by the trustee. Section 1326(a) was added in 1984, to require debtors to start making

---

[21] At that time, § 1326 read in its entirety:
> (a) Before or at the time of each payment to creditors under the plan, there shall be paid—
>> (1) any unpaid claim of the kind specified in section 507(a)(1) of this title; and
>> (2) if a standing trustee appointed under section 1302(d) is serving in the case,
> the percentage fee fixed for such standing trustee under section 1302(e) of this title.
>
> (b) Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan.
>
> 11 U.S.C. § 1326 (1978).

-12-

plan payments to the trustee shortly after the case was filed and prior to plan confirmation.[22] It

seems very unlikely Congress intended to require that debtors make only partial payments, i.e.

the payments for the benefit of creditors but not the trustee's fees.  The Court therefore

concludes that the § 1326(a)(1)(A) payments include the trustee's fees.

Finally, the Court's interpretation of § 1326(a)(1)(A) is consistent with the structure of §

1326.  The UST's proposed reading of § 1326(a)(1)(A) would mean that the debtor's required

payments to the trustee are less than the payments the trustee must make under § 1326(b) and (c).

Such a construction is not reasonable given the language of § 1326(a)(1)(A).  The better reading

is that payments proposed by a plan to the trustee under § 1326(a)(1)(A) include the trustee's

fees, so the proposed amount matches what the trustee is required to pay out under § 1326(b) and

(c).

---

[22] The Senate Report contains the following discussion regarding why § 1326(a) was added:

> Under present law, payments under a chapter 13 plan frequently do not begin until the
> plan is confirmed. This sometimes takes several months or longer. Unfortunately, when
> the payments do not begin promptly, the debtor becomes accustomed to living on money
> that will not be available once the plan becomes operational; and it may be very difficult
> for the debtor to scale down expenditures once the plan begins. Indeed, chapter 13
> trustees report that there is much greater incidence of compliance with the plan when
> payments begin promptly, and prompt commencement is required in some districts by
> local court rules. Moreover, the period between the filing of a plan and confirmation
> provides a good test of whether the debtor will be able to carry out the plan, or whether
> some modification is necessary.
> In testimony before the Committee it was pointed out that:
>> In a number of districts the debtors are expected to, and do, commence making
>> payments to the trustee immediately upon the filing of the case; and we suggest
>> that adequate authority for such procedure is presently in the statute. However,
>> the language contained in section 1325(b) has led some courts to conclude that
>> the debtor *should not* make payments immediately upon filing of the case.
>> (Emphasis added.)
> There appears to be broad agreement that payments to the trustee should commence
> immediately upon filing of the plan.
>
> S. Rep. No. 98-65, at 15-16 (1983).

-13-

E.    Section 586(e)(2) Cannot be Read in Isolation, and Can be Harmonized with

§1326.  The first sentence of 28 U.S.C. § 586(e)(2)[23] can be construed in at least three ways:

--*Mandatory Construction*:

> The subsection obligates the trustee to collect trustee fees from all payments she receives under a plan, which includes payment of the collected fee to herself or the UST System Fund even in cases where no plan is confirmed;

--*Collect and Hold Construction*:

> The subsection requires the Trustee to collect and hold the fees until confirmation, then to disburse them as directed by 11 U.S.C. § 1326(a)(2) and 28 U.S.C. § 586(e)(2).

--*Responsibility and Source Construction*:

> The subsection identifies the Trustee as the party responsible for collecting the percentage fees, and identifies the plan payments received by the Trustee as the sole source for collection, but does not address when the fees should be collected or paid to the Trustee or UST System Fund.

Each of these three constructions is plausible.  Without reference to Chapter 12 and Chapter 13, the Trustee's and UST's proposed "mandatory" construction makes some sense. Given the Court's construction of §1326(a)(1)(A), however, the "mandatory payment" interpretation of § 586(e)(2) creates a conflict with § 1326 because it requires the Trustee to collect and retain the percentage fee (or to pay any surplus to the UST System Fund) in the face of § 1326(a)(2)'s directive to return payments to the debtor if a plan is not confirmed.

To avoid this conflict, the Court concludes that the best, most harmonious reading of the two statutes is that § 586(e)(2) directs the trustee to collect and hold the percentage fees pending plan confirmation, while § 1326(a)(2) tells the trustee when and how to disburse payments after

---

[23] "Such individual shall collect such percentage fee from all payments received by such individual under plans in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee."

-14-

confirmation or denial of confirmation, including the trustee's percentage fee.[24] The UST points

out that § 586(e)(2) requires the trustee to collect the percentage fee on all payments received

under plans, not limiting such collection to confirmed plans. The UST points out further that in

the Code, the term "plan" is used to refer to both confirmed and unconfirmed plans unless the

term "confirmation" or "confirmed" appears in close proximity or the context clearly dictates

otherwise. The Court finds this argument persuasive as it relates to § 586(e)(2) and agrees that

the trustee is to collect the percentage fee from all payments received under both confirmed and

unconfirmed plans. This construction is consistent with the Court's determination that payments

proposed by a plan under § 1326(a)(1)(A) include all payments the debtor makes to the trustee,

including the trustee's percentage fee. The Court disagrees that the term "collect," as used in §

586(e)(2), includes not only setting aside funds from payments received under plans for trustee's

fees but also paying those funds to the trustee or to the UST System Fund. Such a construction

would conflict with §§ 1326(a)(1)(A) and 1326(b)(2). As discussed above, § 1326(b)(2) requires

the trustee in unconfirmed cases to return to the debtor all funds received, including the trustee's

fee, after payment of administrative expenses. Consequently, even though §586(e) does not

specifically address when the collected trustee's fees are to be paid out, the Court rejects the

---

[24] The apparent conflict arose as a result of the changes to § 1326 in 1984, which added subsection (a)(2). When the Bankruptcy Code was enacted in 1978, the legislative history stated in part:

> If a private standing trustee serves, his fee is fixed by the Attorney General under proposed 28 U.S.C. § 586(e), and it will be payable under proposed 11 U.S.C. 1326(a)(2).

> House Report No. 95-595, 1978 U.S.C.C.A.N. 5963, 6284.

Before 1984, it appears that the general practice was that debtors' monthly plan payments to the trustee started on confirmation. Thus 28 U.S.C. § 586 did not conflict with 11 U.S.C. § 1326 because a standing Chapter 13 trustee typically would not receive plan payments until confirmation, and then would pay the trustee's percentage fee before making payments called for in the confirmed plan.

-15-

UST's construction of § 586 payment of such fees from payments in cases with unconfirmed plans.

The requirement in the second sentence of § 586(e)(2),[25] directing the Trustee to pay certain excess funds to the UST System Fund, does not conflict with the Court's interpretation of § 586 and § 1326. Both clauses in the second sentence of § 586(e)(2) can be reasonably interpreted only to require payments in cases in which plans are confirmed. Nothing in the second sentence of § 586(e)(2) requires the trustee to generate such a surplus by paying her salary and operating expenses from funds collected in cases where no plan is confirmed.

F.      Comparing § 1226 and § 1326. The Court's harmonization of § 586 and § 1326 is further supported by the differences between § 1326(a)(2) and its Chapter 12 counterpart, § 1226(a)(2). Section 1226(a) provides:

> (a) Payments and funds received by the trustee shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan. If a plan is not confirmed, the trustee shall return any such payments to the debtor, after deducting--
>
> > (1) any unpaid claim allowed under section 503(b) of this title; and
> >
> > (2) **if a standing trustee is serving in the case, the percentage fee fixed for such standing trustee**.

11 U.S.C. § 1226(a) (emphasis added). Thus, for Chapter 12 cases, Congress specifically addressed the issue by allowing the standing Chapter 12 trustee to deduct her percentage fee in

---

[25] The second sentence provides:
> Such individual shall pay to the United States trustee, and the United States trustee shall deposit into the United States Trustee System Fund—
>
> > (A)     Any amount by which the actual compensation of such individual exceeds 5 per centum upon all payments received under plans in cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee; and
> >
> > (B)     Any amount by which the percentage for all such cases exceeds—
> >
> > > (i)          Such individual's actual compensation for such cases ….

unconfirmed cases from funds returned to the debtor.  Congress did not, however, add similar language to § 1326(a)(2).  Section 1226(a) was adopted in 1986, two years after Congress added what is now § 1326(a). When Congress enacted § 1226(a), it also amended § 1326, leading the Court to conclude that Congress could have easily inserted a similar provision into § 1326(a). The fact that it did not supports an inference that Congress intended different treatment of trustee fees in Chapter 12 and 13 cases.  When "'Congress includes particular language in one section of a statute but omits it in another section of the same Act,'" the difference is presumed to be intentional.  *Russello v. United States,* 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir.1972).  *See generally Miranda*, 2001 WL 1538003 at \*2 (citing the foregoing cases and stating that "Congress knew how to clearly express such allowance of percentage fees, and its failure to do so in § 1326(a) indicates Congress did not intend to allow such fees in Chapter 13 cases where plans are not confirmed.").  It would be improper for the Court to read § 1226(a)(2) into Chapter 13, or to ignore the crucial difference between the sections.

G.    <u>*Rivera* and *Miranda*</u>.  Finally, although neither *Rivera* nor *Miranda* is binding on this Court,[26] the Court remains persuaded by the reasoning in those cases.  Both *Rivera* and *Miranda* found that while § 586(e) authorizes the standing Chapter 13 trustee to collect the percentage fee and determine how the fee shall be calculated, it must be read in conjunction with § 1326, the applicable Bankruptcy Code section which calls for the standing Chapter 13 trustee to return payments to the debtor (less administrative expenses) if a plan is not confirmed.  *See Rivera,* 268 B.R. at 293-294; *Miranda,* 2001 WL 1538003 at \*2.  *Miranda* also found persuasive the specific language contained in §1226 which Congress did not include in the parallel statute

---

[26] *See* footnote 2, supra.

applicable to Chapter 13. *Id.* The UST's and the Trustee's request for a different result is not based on a substantial change in the relevant statutes, but rather on new arguments about the construction of those statutes.[27] That is too slender a reed. The Court has considered the UST's and the Trustee's arguments and found them unpersuasive.

### III. CONCLUSION

The two statutes at issue can best be harmonized if § 586(e)(2) is construed to a) identify a source from which trustee's percentage fees are to be paid; and b) instruct the Trustee to collect and hold the fees pending plan confirmation; § 1326(a), in turn, dictates the conditions and timing of payment. This construction, the Court believes, is what Congress intended, and is a more natural reading of the subsections. The Court acknowledges that its method of harmonizing the statutes is not totally satisfying—it is based on a somewhat unnatural reading of the first sentence of § 586(e)(2). The only alternative, however, is a substantially less natural reading of § 1326(a). On the whole, the Court believes that its construction better reflects legislative intent. 11 U.S.C. § 1326(a)(2) and 28 U.S.C. § 586(e)(2), read together, require the Trustee to return all plan payments to the Debtors (after deducting administrative expenses) without first deducting her percentage fees.

---

[27] In 2005 Congress added language to § 1326(a)(1). Before the amendment, the subsection read: "Unless the court orders otherwise, the debtor shall commence making the payment proposed by a plan within 30 days after the plan is filed." The 2005 amendment, if anything, makes more clear than before that the payments referred to are debtor's proposed monthly payments to the trustee, rather than the payment proposed to be made by the trustee to creditors. Congress also amended § 1326(a)(2), adding language that refers to a new subsection (3). The additional language generally has been interpreted to deal with adequate protection payments. *See e.g., In re Fernandez,* 2011 WL 1404891, at *8 (S.D. Tex. 2011), *aff'd,* 478 Fed.Appx. 138 (5th Cir. 2012); *In re Inyamah,* 378 B.R. 183, 185 (Bankr. S.D. Ohio 2007); *In re Sexton,* 397 B.R. 375, 378 (Bankr. M.D. Tenn. 2008); *In re Hampton,* 383 B.R. 560, 562-63 (Bankr. S.D. Ga. 2008). As such, it has no bearing on the issue before the Court.

The Motions will be granted.  Separate orders will be entered.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

_____
DAVID T. THUMA
United States Bankruptcy Judge

Date entered on docket:  August 7, 2013

Copies to:

Michael K Daniels
P.O. Box 1640
Albuquerque, NM 87103-1640

Kelley L. Skehen
625 Silver Avenue SW, Suite 350
Albuquerque, NM 87102-3111

Alice Nystel Page
Office of the United States Trustee
P.O. Box 608
Albuquerque, NM 87103